## Wanamaker Estate

Before Sinkler, P. J., Klein, Bolger, Ladner and Hunter, JJ.

*Frank F. Truscott*, city solicitor, *Joseph T. Coghlan*, assistant city solicitor, and *J. Willison Smith, Jr.*, of *Power & Smith*, for exceptants.

*Edward S. Morris*, of *Duane, Morris & Heckscher*, contra.

HUNTER, J., June 10, 1949.—Testator by the thirty-third item of his will gave the ultimate residue of his estate to be used in the "building of a Home for Boys, in the City of Philadelphia, whose misdemeanors have subjected them to the law, and, for want of any other place are disgraced by being committed to the House of Correction, and other Institutions, that there may be a proper place for temporary detention, at the discretion of the Judges of the Courts, who desire to take merciful cognizance of a foolish boy who was led into mischief, or crime, without knowing where he was going."

The balance of residuary estate is but $30,000, a sum inadequate to erect and maintain a home for boys in accordance with the terms of the will. A master was appointed to report upon the application of the fund cy pres, and his report and exceptions thereto are now before us.

In his report and supplemental report, the master discusses the merits of 26 claimants, and recommends that the fund be awarded to the Big Brother Association, a corporation organized "to assist, protect and encourage boys, who may be in need of friendship and guidance of an older brother, and to furnish to persons in need of elevating home influences, entertainment, amusement, instruction and means of recreation, which shall be morally improving".

The association does not provide a place of detention. It cares for a boy who has contravened the law, by warning, probation and supervision, so that the tendency to error may be corrected by guidance rather than by control exercised by an institution which would limit his normal environment and activity. It is stated as of 1944 that 9,967 boys had been referred to the association, of which 2,611 were referred by the Municipal Court, and the remainder by other agencies

throughout the community, including the board of education.

Exceptions to the master's report have been filed by the Bethany Collegiate Presbyterian Church and the Bethany Brotherhood, and by the City of Philadelphia.

Bethany Brotherhood is a men's organization within Bethany Collegiate Presbyterian Church, of which church testator was the founder, and in which his activities and leadership continued until his last illness and death. Claimant does not provide a home for boys, and proposes to use the fund for the religious activities of the brotherhood and church.

By his will testator gave the church the income of $200,000, and the brotherhood the income of $50,000, but by reason of insufficient assets and a compromise agreement among the beneficiaries, these legacies were cut down to 60 percent.

The claim is made as a legatee, not as a matter of right, but as one entitled to consideration in an application cy pres, claimant's contention being that testator's estate should not be given to an outside institution, not named in the will, but rather to charities which testator himself had specified.

We agree with the ruling of the master that the charitable purposes of claimant do not approximate the intent expressed by testator. This distinguishes Pentz's Estate, 42 D. & C. 296, cited by claimant where an award was made to a legatee named in the will upon a finding by the court that thereby the intention of testator would be carried out as nearly as may be.

The City of Philadelphia, exceptant, claims on behalf of "Pennypack House" which is a public institution operating under the Department of Welfare.

The master rejected the City's claim because Pennypack House in all its characteristics nearly approaches a penal institution, and does not satisfy the prerequisites set forth by testator, whose intention in

the opinion of the master was to eliminate institutions of a public and penal character. Furthermore, the fund is insufficient to provide the housing facilities which is the need of Pennypack House.

The late president judge of the Municipal Court, Judge Brown, who frequently sat in the juvenile division of that court, explained to the master that the Pennypack House was just the type of place that decedent had in mind. To it were *committed* juveniles who are first offenders but need some kind of restraint, unlike boys who are *released on* probation and turned over to the Big Brothers Association. The Pennypack House is located on a plot of ground of about 25 acres adjacent to the House of Correction. In it are contained classrooms, work shops, recreation hall, library and suitable place for interview with visitors. It is a place of minimum restraint without high walls or fences, where the boys are taught largely manual training, including courses in carpentering, bricklaying, electrical wiring, plumbing and automobile repairing. The instruction is given by two teachers who are supplied by the board of education. The boys are not committed for a specified term. Their terms are left indefinite, and their commitment is therefore temporary, it being the practice for the teaching staff to send a report to the court at the end of three months, reporting the progress and aptitude of the boy. If this report is satisfactory, the boy is then returned to his home and frequently placed in a job.

The serious defect of Pennypack House lies in the fact that the boys, because of lack of proper facilities, are compelled to sleep in a cell block in the House of Correction and to eat their meals there.

Director of Welfare Sara S. McNeil testified that if the money is awarded to the city, it will be applied towards expanding Pennypack House to include a dormitory and dining room so that the boys can sleep

there and will not be obliged to have any physical contact with the House of Correction.

Testator contemplated that his residuary estate would produce the substantial sum needed to erect a home for boys, but that failing we see no reason why the smaller sum which is available should not be applied in the expansion of an existing public institution if it will provide such a home. The home which testator visualized was both public and penal in the sense that it must be sanctioned by law to serve as a place of detention for boys who had offended the law and were under the control and direction of the courts.

Pennypack House has within its facilities much that testator desired, but it is at present disqualified because it is not completely divorced from the House of Correction.

We have carefully considered the merits of the respective claimants, and in our opinion Pennypack House, if properly equipped, more nearly approximates the purpose of testator.

We will, therefore, make a tentative award of the fund to the City of Philadelphia, conditioned upon city council appropriating sufficient money within a reasonable time to complete the equipment of Pennypack House as set forth in the annexed decree.

It is the opinion of the court that the next charity approximating the intent of testator is the Big Brother Association, and if the City of Philadelphia does not meet the conditions within the time fixed, an award will be made to the Big Brother Association.

There was also referred to the master the disposition of a fund of $8,000 held by a trustee for the Men's Friendly Inn under the seventeenth item of the will, the purpose of which was the housing and feeding of homeless men. Due to financial reasons, the Friendly Inn closed in 1934, and has ceased to function. The

master recommends that this fund be awarded to the Salvation Army for the use of its hotel for men at 1224 Parrish Street, Philadelphia, whose charitable purpose is a close approximation of the work of the Friendly Inn.

We therefore enter the following

### Decree

And now, June 10, 1949, the exceptions of Bethany Brotherhood and Bethany Collegiate Presbyterian Church are dismissed.

The exceptions of the City of Philadelphia are sustained to the extent that the principal and accumulated income of the trust for the home for boys under item 33 of the will are awarded to the City of Philadelphia, conditioned upon city council appropriating sufficient money, which, together with said fund, will provide sleeping and dining facilities at Pennypack House, and conditioned also upon the management being separate from that of the House of Correction; the city being required to take the necessary steps to meet these conditions on or before December 31, 1952. If met, upon application of the city solicitor, an appropriate final decree awarding the fund will be entered.

If the City of Philadelphia does not meet these conditions within the time fixed, an award will be made to the Big Brother Association.

The fund to remain in the hands of Barclay H. Warburton and Girard Trust Company, trustees, until further order of the court.

The recommendations of the Master as to the trust of $8,000 under Item 17 of the will for the Men's Friendly Inn are adopted, and said fund is awarded to the Salvation Army for the use of its hotel for men at 1224 Parrish Street, Philadelphia.